Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:     (801) 201-1642
Facsimile:     (801) 666-7749
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| IHC HEALTH SERVICE, INC. dba INTERMOUNTAIN MEDICAL CENTER, | ) ) ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-00453-CMR |
| | ) | |
| v. | ) | Magistrate Judge Cecilia M. Romero |
| | ) | |
| MARKO FOAM PRODUCTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including INTERMOUNTAIN MEDICAL CENTER ("IMC" or the "Hospital"), in Salt Lake City, Utah.

2.     IHC and the Hospital may be referred to collectively herein as "Plaintiff."

3.    MARKO FOAM PRODUCTS ("Marko" herein) is a Utah corporation.

4.    Marko funds a health insurance plan (the "Plan" herein), identified in the plan document as "Marko Foam Products."

5.    M.B. is a beneficiary and participant of the Plan.

6.    Marko is the Plan Administrator of the Plan.

7.    Defendant contracted with Cigna Health and Life Insurance Company ("Cigna" herein) to act as claims administrator for the Plan.

8.    Cigna acts on behalf of Defendant in determining whether or not claims are to be paid.

9.    Cigna pays claims in accordance with the Plan rules established by Defendant.

10.   Cigna acts as an agent of Defendant in administering the Plan.

11.   The Plaintiff provided medical treatment to M.B. at the Hospital in Salt Lake City, Utah, on December 5, 2015 through December 15, 2015 (the "Dates of Service").

12.   M.B. was, at all times relevant hereto, a resident of the State of Utah.

13.   M.B. signed an Assignment of Benefits ("AOB") in favor of the Plaintiff for the claim which is in dispute herein.

14.   The AOB authorizes Plaintiff to appeal, negotiate, or otherwise pursue payment of any benefits from the Plan for the Dates of Service.

15.   The AOB designated the Plaintiff as an authorized member representative to appeal all denied claims.

16.   Pursuant to the AOB, Plaintiff "stands in the shoes" of M.B. as a beneficiary of the Plan.

17.   This is an action brought under ERISA.   This Court has jurisdiction in this matter under 29 U.S.C. § 1132(e)(1).   Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C.

§ 1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendant in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah.   Additionally, ERISA provides in 28 U.S.C. § 1391(c)(3) that "a defendant not resident in the United States may be sued in any judicial district." Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, jurisdiction and venue are appropriate in the District of Utah.

18.  The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. § 1132(a)(1)(B), for penalties pursuant to 29 U.S.C. § 1132(a)(1)(c), for interest and attorneys' fees under 29 U.S.C. § 1132(g), and for other appropriate equitable relief under 29 U.S.C. § 1132(a)(3).

## FACTUAL BACKGROUND

### A.  Medical Treatment

19.  Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

20.  At the time of treatment, M.B. was a 36-year-old man with no known medical history who sustained multiple gunshot wounds.

21.  On December 5, 2015, M.B. presented via Emergency Medical Services to the Emergency Department of the Hospital for evaluation and treatment with a tourniquet on the left leg due to blood loss of approximately one liter.

22.  Upon presentation, M.B. was confused and agitated but able to follow commands. He was unable to move his left foot or hand. He was intubated for his safety. Imaging studies revealed a bullet on the right lateral femoral condyle with subcutaneous emphysema and a

3

left femoral diaphyseal fracture. Angiography of the left arm showed marked narrowing in the brachial artery and brachial venous intraluminal gas with laceration of the venous wall. M.B. was treated with intravenous (IV) antibiotics and multiple units of blood and blood products and taken directly to surgery for repair of his vascular and orthopedic injuries. Procedures included femoral-popliteal bypass grafting and four compartment fasciotomies due to significantly tense edematous tissues. A wound VAC (Vacuum-Assisted Closure) was applied to the fasciotomies. M.B. was admitted to the ICU thereafter.

23.   M.B. demonstrated left media nerve palsy and possible left leg palsy versus contusion.   He developed Rhabdomyolysis and was provided with aggressive IV fluids. His Creatine Kinase ("CK") levels were tracked; they peaked at 18863.

24.   On December 14, 2015, M.B. underwent delayed primary closure of the left lateral and medial calf wounds with replacement of the wound VAC.

25.   On December 15, 2015, M.B. was deemed to be stable for discharge to home with home health services support for wound care, physical therapy, occupational therapy, and wound VAC changes. He was tolerating a regular diet, his pain was controlled with oral medications, and his vital signs and lab values were within normal limits. He was provided with applicable discharge, medication, activity, diet, and wound care instructions, and advised to follow-up with orthopedics and vascular surgery in one week.

26.   M.B.'s Emergency Department presentation, surgeries, and associated postoperative care were medically necessary to treat traumatic injuries sustained by multiple gunshot wounds. All care was provided in accordance with current medical guidelines under the direction of

the treating and consulting physicians as indicated by clinical findings, ongoing assessments, and patient reports, and tailored to M.B.'s unique health care needs.

27.     The Plaintiff's billed charges for the treatment it rendered to M.B. at the Hospital were $180,876.70 ("Billed Charges").

**B.    Claims and Claim Processing**

28.     The Hospital submitted a claim to the Defendant and/or its agents in a timely manner for M.B.'s Billed Charges.

29.     The Defendant paid $42,908.69 to the Hospital for this claim (approximately 24% of Billed Charges).

30.     The Defendant and/or its agents denied a significant portion of Plaintiff's claim because Defendant asserted treatment was provided out of network and the Billed Charges exceeded a maximum allowed amount.

31.     Plaintiff has made timely appeals to Defendant and/or its agent, however Defendant denied these appeals.

32.     Plaintiff has exhausted its administrative remedies under the Plan.

33.     Plaintiff's appeals requested the underlying data for Defendant's calculation of a maximum allowed fee which served as the basis of denying benefits.

34.     The Defendant has provided no supporting evidence to deny Plaintiff's claim.

35.     Several attempts to resolve the matter have ensued, but the Defendant continues to deny the balance of this claim.

36.    The parties have also communicated many times by phone, as set forth in the electronic and written records kept by the Plaintiff of the communications it has had with the Defendant during the appeal process.

37.    Plaintiff's litigation counsel, Ms. Marcie E. Schaap, sent a final appeal letter to the Defendant agent on November 30, 2018.

38.    A copy of the Plaintiff's communication records was sent to the Defendant and/or its agents prior to this litigation being filed.

39.    The Defendant has not paid the outstanding balance due to the Plaintiff for the treatment the Hospital rendered to M.B.

40.    A balance of $137,968.01, plus interest, remains due to the Plaintiff from the Defendant for the treatment the Hospital rendered to M.B.

**FIRST CAUSE OF ACTION**
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

41.    Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

42.    The Plaintiff has submitted all proof necessary to the Defendant to support its claims for payment.

43.    The Defendant has failed to provide evidence to the Plaintiff to support its basis for denial.

44.    The Defendant has not fully reviewed or investigated all information sent to it by the Plaintiff and/or the Hospital, or available to it, which has caused the Defendant to deny a large portion of this claim.

45.     The Defendant has failed to bear its burden of proof that an exclusion or requirement in the Plan Document supports its denial of a large portion of the claim for M.B.'s treatment.

46.     The Defendant failed to offer the Plaintiff a "full and fair review" as required by ERISA.

47.     The Defendant failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. MetLife v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

48.     The actions of the Defendant and/or its agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

49.     The actions of the Defendant and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

50.     The Defendant are responsible to pay the balance of the claim for M..'s medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duties Under 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3))

51.     Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

52.     Defendant has breached its fiduciary duties under ERISA in the following ways:

        A.      Defendant has failed to discharge its duties with respect to the Plan:

                1.      Solely in the interest of the participants and beneficiaries of the Plan and

                2.      For the exclusive purpose of:

                        a.      Providing benefits to participants and their beneficiaries; and

      b.      Defraying reasonable expenses of administering the Plan.

    3.      With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

    4.      By failing to fully investigate the Plaintiff's claims.

    5.      By failing to fully respond to the Plaintiff's appeals and requests for information in a timely manner.

    6.      And in other ways to be determined as additional facts are discovered.

53.    The actions of the Defendant in breaching its fiduciary duties under ERISA have caused damage to the Plaintiff in the form of denied medical benefits.

54.    In addition, as a consequence of the breach of fiduciary duties of the Defendant, the Plaintiff has been required to obtain legal counsel and file this action.

55.    Pursuant to ERISA and to the U.S. Supreme Court's ruling in IMS Corp. v. Amara, 131 S. Ct. 1866, 179 L.Ed. 2d 843 (2011), the Plaintiff's "make-whole relief" constitutes "appropriate equitable relief" under Section 1132(a)(3).

56.    Therefore, the Plaintiff is entitled to payment of the medical expenses it incurred in treating M.B., as well as an award of interest, attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendant pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount

8

of $137,968.01 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

2.    For judgment on Plaintiff's Second Cause of Action in favor of the Plaintiff and against the Defendant pursuant to 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3)), for breach of fiduciary duty and equitable damages in the form of unpaid medical benefits in the amount of $137,968.01 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

For such other equitable relief under 29 U.S.C. §1132(a)(3) as the Court deems appropriate.

DATED this 28th day of June, 2019.

MARCIE E. SCHAAP, ATTORNEY AT LAW

By:   /s/ Marcie E. Schaap
                    Attorney for Plaintiff